UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMBER M. WILK,

Plaintiff,

v.

CITY OF ROCHESTER; OFFICER JOSEPH
BONACCI, individually and in his official capacity;
and OFFICER JASON LATHROP, individually and in
his official capacity,

Defendants.

COMPLAINT AND
JURY DEMAND

Case No.: _____

Plaintiff Amber M. Wilk ("Plaintiff"), by and through her attorney, David S. Stern, Esq.,

brings this Complaint against Defendants City of Rochester (the "City"), Officer Joseph Bonacci

("Officer Bonacci"), and Officer Jason Lathrop ("Officer Lathrop") (collectively, "Defendants"),

and alleges as follows:

NATURE OF THE ACTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Fourth

and Fourteenth Amendments to the United States Constitution, arising from Plaintiff's false

arrest, malicious prosecution, illegal search, denial of access to counsel, and fabrication of

evidence by officers of the Rochester Police Department ("RPD") on and after November 21,

2023.

2.      On that date, Plaintiff was the victim of a motor vehicle accident caused by

another driver who ran a red light. Despite passing multiple field sobriety tests, showing no signs

of impairment, and testing negative for alcohol, Plaintiff was arrested and charged with Driving

While Ability Impaired by Drugs (V&T § 1192(4)) and Driving While Ability Impaired by

Drugs and Alcohol (V&T § 1192(4)(A)). The charges were subsequently dismissed following a

probable cause hearing.

3.      The arresting officer, Officer Joseph Bonacci, has a documented history of fabricating evidence, forging official court documents, and providing false testimony under oath in connection with impaired-driving investigations. A Rochester City Court judge has previously declined to credit Officer Bonacci's testimony, and the Monroe County District Attorney's Office has acknowledged that information regarding Officer Bonacci's prior misconduct constitutes Brady material. Despite this known history, the City of Rochester continued to deploy Officer Bonacci in impaired-driving investigations without adequate supervision, discipline, or corrective action, resulting in the constitutional violations alleged herein.

## JURISDICTION

4.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

5.      This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## VENUE

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because:

(a) All Defendants reside in this District; and

(b) A substantial part of the events or omissions giving rise to the claims occurred in the City of Rochester, Monroe County, New York, which is within this District.

## PARTIES

7.      Plaintiff Amber M. Wilk is a citizen of the State of New York, residing at 383 Churchill Drive, Rochester, New York 14616.

8.      Defendant City of Rochester is a municipal corporation organized and existing under the laws of the State of New York, located in Monroe County, New York. The City of Rochester is responsible for the operation, supervision, training, and discipline of the Rochester Police Department and its officers. The City is sued pursuant to 42 U.S.C. § 1983 under the doctrine established in Monell v. Department of Social Services, 436 U.S. 658 (1978).

9.      Defendant Officer Joseph Bonacci is and was at all relevant times a police officer employed by the Rochester Police Department, City of Rochester. Officer Bonacci is sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief. At all relevant times, Officer Bonacci acted under color of state law.

10.     Defendant Officer Jason Lathrop is and was at all relevant times a police officer employed by the Rochester Police Department, City of Rochester. Officer Lathrop is sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief. At all relevant times, Officer Lathrop acted under color of state law.

FACTUAL ALLEGATIONS

A. The Motor Vehicle Accident — November 21, 2023

11.     On November 21, 2023, at approximately 9:50 p.m., Plaintiff was operating her motor vehicle through the intersection of Campbell Street and Ames Street in the City of Rochester, New York.

12.     Plaintiff's vehicle was struck by another vehicle that ran a red light. Plaintiff was the victim of the accident, not the cause.

13.     As a result of the collision, Plaintiff suffered a serious concussion, a neck injury, bruising and pain along her right leg, and pain across her chest from the seatbelt.

B. The Arrival of Officers and Field Sobriety Testing

14.     Officer Lathrop arrived on the scene and obtained Plaintiff's driver's license and insurance information. The first diversion test Officer Lathrop performed on Plaintiff was the retrieval of her license and insurance card, which Officer Lathrop later testified Plaintiff passed.

15.     Officer Lathrop testified at a pre-trial hearing that he did not detect any odor of marijuana emanating from Plaintiff.

16.     Subsequently, Officer Joseph Bonacci arrived on the scene and conducted roadside field sobriety tests on Plaintiff.

17.     Plaintiff informed the officers that she had not consumed any alcoholic beverages prior to the incident and that she had not taken any mood-altering drugs or medications that impaired her ability to drive a motor vehicle. Plaintiff did disclose that she had taken two puffs of marijuana approximately four and one-half hours earlier, at approximately 5:30 p.m., when she had arrived home from work.

18.     Plaintiff volunteered to undergo a roadside screening test and an Alco-sensor test. Both tests indicated negative results for alcohol.

19.     Plaintiff underwent a Horizontal Gaze Nystagmus ("HGN") test, which Plaintiff passed.

20.     Plaintiff was also required to undergo the walk-and-turn test, which Plaintiff believes she passed.

21.     There were no observations at the scene of any odor of an alcoholic beverage on Plaintiff's breath, nor any odor of marijuana.

22.     Plaintiff's eyes were not glassy, her speech was not impaired, and her motor coordination was not impaired. Any physical difficulties Plaintiff exhibited were the direct result

of the injuries she sustained in the motor vehicle accident, including her concussion, neck injury, and leg and chest pain from the seatbelt.

C. The Unlawful Arrest

24. Despite the absence of any objective indicia of impairment — including negative alcohol screening, negative Alco-sensor test, passing the HGN test, no odor of alcohol or marijuana, no glassy eyes, and no impaired speech — Officer Bonacci arrested Plaintiff for Driving While Ability Impaired by Drugs (V&T § 1192(4)) and Driving While Ability Impaired by Drugs and Alcohol (V&T § 1192(4)(A)).

25. There was no probable cause to arrest Plaintiff for either charge. The totality of the circumstances known to the officers at the time of the arrest — including the negative test results, the absence of physical signs of impairment, and the obvious physical injuries from the accident that explained any coordination difficulties — would not warrant a person of reasonable caution to believe that Plaintiff was operating her vehicle while impaired by drugs or alcohol.

26. The officers knew or should have known, through their training, department regulations, and the general orders of the Rochester Police Department, that Plaintiff had not committed any crime and that there was no reasonable basis to believe Plaintiff had acted unlawfully.

D. Denial of Access to Counsel

27. During the encounter, Plaintiff's legal counsel arrived at the scene.

28. The arresting officers refused to allow Plaintiff to speak with her legal counsel, despite Plaintiff's repeated requests to do so.

29. The officers verbally mocked Plaintiff when she asserted her right to counsel, subjecting her to ridicule for invoking her constitutional rights.

30. The officers' conduct in denying Plaintiff access to her attorney who was physically present at the scene, combined with their verbal mockery of Plaintiff's assertion of her rights, was undertaken deliberately and with the purpose of intimidating Plaintiff and depriving her of the ability to consult with counsel during a custodial encounter.

E. The Illegal Search

31. The officers of the Rochester Police Department illegally searched Plaintiff's vehicle without a warrant, without consent, and without probable cause.

32. The search yielded no evidence that any crime had been committed.

F. The Malicious Prosecution and Fabrication of Evidence

33. Following Plaintiff's arrest, criminal proceedings were filed against Plaintiff in Rochester City Court.

34. Plaintiff was arraigned, attended pre-trial conferences, and was required to appear in open court to answer to the charges.

35. A probable cause hearing was held. During the probable cause hearing, Officer Bonacci intentionally testified falsely under oath, including testifying that he detected the odor of marijuana emanating from Plaintiff. This testimony was fabricated. Plaintiff believes this testimony was purposefully false and calculated to secure a wrongful conviction.

36. Officer Bonacci's fabricated testimony that he detected the odor of marijuana was material information likely to influence a jury's verdict, as it constituted the primary evidence of impairment that the prosecution relied upon to support the charges.

37. Officer Bonacci forwarded this fabricated information to the prosecutors handling Plaintiff's criminal case by providing his false account of his observations in official reports and sworn testimony.

38. Officer Lathrop, by contrast, testified at the pre-trial hearing that he did not detect any odor of marijuana. The direct contradiction between Officer Bonacci's testimony and Officer Lathrop's testimony demonstrates that Officer Bonacci's testimony was fabricated.

39. The charges against Plaintiff were dismissed at the probable cause hearing. The criminal prosecution terminated in Plaintiff's favor without a conviction. There is no ongoing prosecution or outstanding conviction arising from the November 21, 2023 arrest.

40. The prosecution was initiated and continued without probable cause and was malicious, initiated without proper justification for purposes of intimidating, harassing, or otherwise causing harm to Plaintiff.

41. As a direct and proximate result of Officer Bonacci's fabrication of evidence, Plaintiff suffered a deprivation of her liberty, including being subjected to criminal prosecution, being required to attend multiple court proceedings, and being forced to defend herself against charges supported by fabricated testimony.

G. Officer Bonacci's Documented History of Misconduct

42. Officer Bonacci has a well-documented history of fabricating evidence, forging official court documents, and providing false testimony under oath in connection with impaired-driving investigations.

43. In or around December 2011, Officer Bonacci drafted a supporting deposition in connection with a DWI arrest under CR: 11-393489, detailing events which he did not personally observe. Officer Bonacci then forged the signature and badge number of another officer on the supporting deposition and submitted it to Rochester City Court. The forged signature appeared directly beneath a notice stating: "FALSE STATEMENTS MADE HEREIN ARE

PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW."

44.     Officer Bonacci was suspended from the Rochester Police Department for approximately 60 days as a result of this misconduct.

45.     On April 21, 2015, Assistant District Attorney Matthew Dunham of the Monroe County District Attorney's Office issued a letter entitled "Brady material pertaining to Rochester Police Department Officer Joseph Bonacci," acknowledging that the information regarding Officer Bonacci's forgery constituted Brady material that must be disclosed to the defense.

46.     On July 29, 2014, during a preliminary hearing in People v. Michael F. Verno (CR Nos. 14-08390 / 14-08390.1), Officer Bonacci was questioned under oath about the circumstances of his suspension. When asked directly, "Did you sign it?", Officer Bonacci testified, "I did not." When asked, "Did another person sign it?", Officer Bonacci testified, "I don't know what someone else did." This testimony was false. Officer Bonacci had personally forged the signature and badge number of another officer on the document.

47.     The presiding judge, Hon. Melchor E. Castro, was not informed of the true nature of Officer Bonacci's misconduct and cut off the cross-examination, stating, "Didn't he just say it was somebody else's paperwork he turned in that he wasn't supposed to turn in, so it had nothing to do with his truthfulness." Had the judge been aware that Officer Bonacci had committed a forgery, he would have recognized that the conduct went directly to Officer Bonacci's truthfulness.

48.     Upon information and belief, the Monroe County District Attorney's Office was aware that Officer Bonacci gave false testimony at the July 29, 2014 hearing but failed to disclose this fact to the defense or the Court.

49.     On April 20, 2023, in People v. William Udicious (Docket No. CR-05585-22), Rochester City Court Judge Michael Lopez granted the defendant's motion to suppress evidence, finding that the People failed to meet their burden of establishing the legality of the police conduct by credible evidence. The Court specifically declined to credit Officer Bonacci's testimony that the defendant displayed indicia of intoxication, including bloodshot, watery eyes and mumbled speech. The Court found that body-worn camera footage contradicted Officer Bonacci's testimony, showing the defendant interacting in a polite and cooperative manner, with speech that sounds coherent. The charges were dismissed.

50.     Despite this extensive and documented history of misconduct — including forgery of official court documents, false testimony under oath, and a judicial finding discrediting his testimony — the City of Rochester continued to employ Officer Bonacci in the Traffic Enforcement Unit and continued to deploy him to conduct impaired-driving investigations. Indeed, upon information and belief, Officer Bonacci received a Monroe County STOP-DWI Traffic Safety Award for his impaired-driving enforcement work, demonstrating that the City not only continued to deploy Officer Bonacci in the very type of investigation where his misconduct had been documented, but actively recognized and rewarded him for that work.

H. Plaintiff's Damages

51.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer the following damages:

(a) Shame, humiliation, indignity, and damage to reputation;

(b) Violation of her civil and constitutional rights;

(c) Mental anguish, emotional distress, suffering, and psychological injuries, which upon information and belief are permanent in nature;

(d) Loss of liberty through unlawful detention and criminal prosecution based on fabricated evidence;

(e) Lost wages;

(f) Attorneys' fees and costs incurred in defending against the malicious prosecution; and

(g) Attorneys' fees and costs incurred in bringing this action.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

False Arrest and False Imprisonment in Violation of 42 U.S.C. § 1983
(Fourth and Fourteenth Amendments)
(Against Officer Bonacci and Officer Lathrop)

52.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

53.    On November 21, 2023, Defendants Officer Bonacci and Officer Lathrop, acting under color of state law, arrested and detained Plaintiff without probable cause, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

54.    At the time of Plaintiff's arrest, the totality of the circumstances known to the Defendant officers — including negative alcohol screening results, a passed HGN test, the absence of any odor of alcohol or marijuana, the absence of glassy eyes or impaired speech, and the obvious physical injuries from the motor vehicle accident — did not provide probable cause to believe that Plaintiff was operating her vehicle while impaired by drugs or alcohol.

55.    As a direct and proximate result of Defendants' unlawful arrest and detention, Plaintiff suffered deprivation of her liberty, emotional distress, humiliation, and other damages in an amount to be proven at trial.

SECOND CAUSE OF ACTION

Malicious Prosecution in Violation of 42 U.S.C. § 1983
(Fourth and Fourteenth Amendments)
(Against Officer Bonacci and Officer Lathrop)

56.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

57.    Defendants Officer Bonacci and Officer Lathrop, acting under color of state law, commenced and/or continued criminal proceedings against Plaintiff by filing charges for Driving While Ability Impaired by Drugs (V&T § 1192(4)) and Driving While Ability Impaired by Drugs and Alcohol (V&T § 1192(4)(A)).

58.    The criminal proceedings terminated in Plaintiff's favor when the charges were dismissed at the probable cause hearing, without a conviction.

59.    There was no probable cause for the criminal proceedings, as set forth above.

60.    The prosecution was initiated with malice, in that Officer Bonacci intentionally testified falsely at the probable cause hearing — including testifying that he detected the odor of marijuana — in an effort to secure a wrongful conviction of Plaintiff.

61.    As a direct and proximate result of the malicious prosecution, Plaintiff was forced to attend multiple court proceedings, suffered deprivation of her liberty, emotional distress, humiliation, damage to reputation, and incurred attorneys' fees and costs in defending against the baseless charges.

THIRD CAUSE OF ACTION

Unreasonable Search in Violation of 42 U.S.C. § 1983
(Fourth and Fourteenth Amendments)
(Against Officer Bonacci and Officer Lathrop)

62. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

63. Defendants Officer Bonacci and Officer Lathrop, acting under color of state law, searched Plaintiff's vehicle without a warrant, without Plaintiff's consent, and without probable cause, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

64. The search yielded no evidence of any crime.

65. As a direct and proximate result of the unlawful search, Plaintiff suffered a violation of her constitutional rights and other damages in an amount to be proven at trial.

FOURTH CAUSE OF ACTION

Denial of Access to Counsel in Violation of 42 U.S.C. § 1983
(Fourteenth Amendment Due Process)
(Against Officer Bonacci and Officer Lathrop)

66. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

67. Defendants Officer Bonacci and Officer Lathrop, acting under color of state law, deliberately refused to permit Plaintiff to speak with her attorney who had arrived at the scene, despite Plaintiff's repeated requests to do so.

68. The officers verbally mocked and ridiculed Plaintiff when she asserted her right to counsel, subjecting her to deliberate intimidation for invoking her constitutional rights.

69. The officers' conduct in physically preventing Plaintiff from communicating with her attorney who was present at the scene, combined with their deliberate mockery and intimidation of Plaintiff for asserting her rights, was so egregious, so outrageous, and so unjustified by any legitimate governmental interest as to shock the conscience and violate Plaintiff's right to substantive due process under the Fourteenth Amendment.

70.     The officers' conduct was undertaken deliberately and intentionally, not as the result of mere negligence, and was designed to intimidate Plaintiff and deprive her of the ability to consult with counsel during a custodial encounter in which she was being subjected to an unlawful arrest.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered a violation of her constitutional rights, emotional distress, and other damages in an amount to be proven at trial.

FIFTH CAUSE OF ACTION

Fabrication of Evidence and Denial of the Right to a Fair Trial
in Violation of 42 U.S.C. § 1983
(Fourteenth Amendment Due Process)
(Against Officer Bonacci)

72.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

73.     Officer Bonacci, an investigating official acting under color of state law, fabricated evidence by knowingly and intentionally providing false testimony under oath at the probable cause hearing, including testifying that he detected the odor of marijuana emanating from Plaintiff, when in fact he did not detect any such odor.

74.     Officer Bonacci's fabricated testimony was material and likely to influence a jury's verdict, as it constituted the primary evidence of drug impairment that the prosecution relied upon to support the criminal charges against Plaintiff.

75.     Officer Bonacci forwarded this fabricated information to the prosecutors handling Plaintiff's criminal case by providing his false account of his observations in official reports and sworn testimony, which the prosecutors relied upon in pursuing the criminal charges.

76.     As a direct and proximate result of Officer Bonacci's fabrication of evidence, Plaintiff suffered a deprivation of her liberty, including being subjected to criminal prosecution, being required to attend multiple court proceedings including arraignment, pre-trial conferences, and a probable cause hearing, and being forced to defend herself against charges supported by fabricated testimony.

77.     The criminal proceedings terminated in Plaintiff's favor when the charges were dismissed at the probable cause hearing, without a conviction. There is no ongoing prosecution or outstanding conviction arising from the November 21, 2023 arrest.

78.     Officer Bonacci's fabrication of evidence violated Plaintiff's right to a fair trial and her right not to be deprived of liberty as a result of fabricated evidence, as guaranteed by the Due Process Clause of the Fourteenth Amendment.

79.     Probable cause, even if it existed, is not a defense to this claim, as the right not to be subjected to criminal prosecution based on fabricated evidence is protected by the Due Process Clause of the Fourteenth Amendment, independent of the Fourth Amendment.

80.     Officer Bonacci's fabrication of evidence in Plaintiff's case was not an isolated incident but was consistent with his documented pattern of fabricating evidence and providing false testimony in impaired-driving investigations, as set forth in Section G above.

81.     As a direct and proximate result of Officer Bonacci's fabrication of evidence, Plaintiff suffered deprivation of her liberty, emotional distress, humiliation, damage to reputation, and incurred attorneys' fees and costs in defending against charges supported by fabricated testimony, in an amount to be proven at trial.

SIXTH CAUSE OF ACTION

Municipal Liability Under 42 U.S.C. § 1983 (Monell)
(Against the City of Rochester)

82.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

83.     The constitutional violations suffered by Plaintiff were caused by the policies, customs, and practices of the City of Rochester, including but not limited to:

(a) Failure to Supervise and Discipline

84.     The City of Rochester maintained a policy, custom, or practice of failing to adequately supervise and discipline Officer Bonacci despite actual knowledge of his documented history of misconduct, including:

(i) Forging the signature and badge number of another officer on a supporting deposition submitted to Rochester City Court;

(ii) Being suspended for approximately 60 days for the forgery;

(iii) Providing false testimony under oath on multiple occasions regarding the forgery, including at the July 29, 2014 hearing in People v. Verno;

(iv) Having his testimony discredited by Rochester City Court Judge Michael Lopez in People v. Udicious on April 20, 2023, where the Court found that body-worn camera footage contradicted Officer Bonacci's claims of observing indicia of intoxication; and

(v) The Monroe County District Attorney's Office acknowledging that information regarding Officer Bonacci's misconduct constituted Brady material.

85.     Despite this extensive record of misconduct, the City of Rochester returned Officer Bonacci to road patrol and the Traffic Enforcement Unit, continued to deploy him in impaired-driving investigations, and failed to take adequate corrective or disciplinary action. Far from disciplining or restricting Officer Bonacci, the City actively recognized and rewarded his impaired-driving enforcement work: upon information and belief, Officer Bonacci received a

Monroe County STOP-DWI Traffic Safety Award, demonstrating that the City not only tolerated his continued deployment in the very type of investigation where his misconduct had been documented, but affirmatively endorsed it.

(b) Failure to Train

86.     The City of Rochester failed to adequately train its police officers, including Officer Bonacci and Officer Lathrop, regarding:

(i) The legal requirements for establishing probable cause for a DWAI arrest, including the significance of negative field sobriety test results and the absence of physical signs of impairment;

(ii) The constitutional prohibition against arresting individuals without probable cause;

(iii) The obligation to consider exculpatory evidence, including negative test results and alternative explanations for physical symptoms (such as injuries from a motor vehicle accident);

(iv) The constitutional prohibition against fabricating evidence and providing false testimony; and

(v) The constitutional right to access counsel.

87.     The need for such training was obvious in light of Officer Bonacci's documented history of fabricating evidence and providing false testimony in impaired-driving investigations, and the City's failure to provide adequate training amounted to deliberate indifference to the constitutional rights of citizens within its jurisdiction.

(c) Widespread Practice

88.     The City of Rochester maintained a widespread practice of tolerating and condoning unconstitutional conduct by its police officers in impaired-driving investigations, including the practice of arresting individuals for DWAI offenses without probable cause,

fabricating evidence to support such arrests, and continuing to prosecute such individuals despite the absence of legitimate evidence supporting the charges.

89.    This practice was so persistent and widespread as to constitute a custom or usage with the force of law, and was so manifest as to imply the constructive acquiescence of senior policymaking officials.

90.    The City's policies, customs, and practices were the moving force behind the constitutional violations suffered by Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

1.    Compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

2.    Punitive damages against Defendants Officer Bonacci and Officer Lathrop in their individual capacities, in an amount sufficient to punish Defendants and deter similar conduct;

3.    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

4.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

5.    Costs of suit incurred herein; and

6.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 17, 2026
        Rochester, New York

Respectfully submitted,

ELLIOTT STERN CALABRESE, LLP

s/David S. Stern

_____

David S. Stern, Esq.
45 Exchange Blvd., Suite 400
Rochester, New York 14614
Telephone: (585) 232-4724
Email: dstern@elliottstern.com
Attorney for Plaintiff Amber M. Wilk